27 So.2d 483

**TURNIPSEED et al. v. MOSELEY.**

4 Div. 383.

Supreme Court of Alabama.

Aug. 2, 1946.

Rehearing Denied Oct. 24, 1946.

Laurence K. Andrews, of Union Springs, and Hill, Hill, Whiting & Rives, of Montgomery, for appellants.

342

Moseley & McIlwain, of Union Springs, for appellee.

SIMPSON, Justice.

Mrs. Rochelle R. Moseley sued Mrs. Orah W. Turnipseed and her daughter, Miss Janice Turnipseed, in equity to establish a boundary line which was in dispute between their coterminous properties. The trial court ascertained the true line to be as claimed by Mrs. Moseley and the Turnipseeds have appealed from that decree.

■ The evidence was by deposition taken before a commissioner and we must sit in judgment on the facts, as if at nisi prius, and arrive at a just conclusion without the aid of any presumption favoring the decision of the trial court on the issues presented. Ala.Dig., Appeal and Error, ⚬═931(1). Though we are not advantaged as was the trial court, who knew the parties and witnesses and perhaps the land in dispute, we, nevertheless, have given the record our studious consideration and have decided that the conclusions reached below were well founded.

The land between the two disputed lines comprises about 39 acres and is largely in swamp, densely wooded, to a great extent impenetrable, and had been little used by any one. The plaintiff, Mrs. Moseley, owns the legal title, by bequest from her deceased husband, whose predecessor in title, D. C. Turnipseed, at one time owned the entire property of all the parties to the litigation. The defendants inherited their property from W. O. Turnipseed, now deceased, who in 1920 received a voluntary conveyance of it from his father, the said D. C. Turnipseed. The Moseley title came from a sale in the probate court by W. O. Turnipseed, as administrator de bonis non of his father's estate in 1924. The question between the parties now is the determination of the correct dividing line between these properties. Mrs. Moseley employed the county surveyor, G. B. Pickett, to survey the property and determine the division line. He was a surveyor of experience and during the past fifteen years had done about ninety per cent of the surveying done in that county, and his survey established the line claimed by Mrs. Moseley and that accepted by the trial judge as the correct one.

The plaintiff and her witnesses testified that she, and her husband before her, had been in the actual or constructive possession of all of the land which the deed called for since its purchase from the Turnipseed estate, including that in dispute. She, and her husband while he lived, had regularly assessed the land for taxes, walked over it many times, patrolled it and had it patrolled by their plantation superintendent, had cut and sold timber from it and put it to such of these various uses as its character and quality was susceptible of.

The defendants admit the legal title to the land in dispute to have been in plaintiff but rest their right to it on adverse possession and prescription. They sought to establish adverse occupancy and user of the property for more than twenty years, up to what they claimed were known boundaries. Their evidence tended in some measure to support this claim, but on the whole it was, in our opinion, uncertain and unsatisfactory to disseise the true owner, as will appear clear in the light of the legal principles hereafter adverted to.

■ As stated, much of the area in dispute was densely wooded and in deep underbrush, and this was largely its condition where the Turnipseeds claimed the line to be. Aside from their showing some use of a plantation road (which, by the way, seems to have been regarded by some of the settlers in the neighborhood as about the boundary and which also approximated the line established by Pickett) and a scattered patch or two of cultivatable land totalling about five acres, the possession and use of the property by the respective parties appear from the evidence to have been about the same, namely, the spasmodic cutting of

344

wood by tenants and occasional sales of timber to merchants. Undoubtedly the proven possessory acts of neither, without color of title, would, in law, have been sufficient to meet the true test of establishing title by adverse possession, since, other constituents not considered, neither's possession, as against the other, was exclusive or continuous. This, of course, casts the suit against the appellants, who were without color of title to any of the disputed area.

■ As observed, there was proof, uncontroverted, that the plaintiff and her husband exercised the possessory acts mentioned over some of the area, and being so, the legal title reposing in them, the law regards such title holders as in constructive possession of the whole. The cases declare that possession under these circumstances extends to all the land described in the deed, not actually in adverse possession of another. Campbell v. Bates, 143 Ala. 338, 346, 39 So. 144; Doe ex Dem. Anniston City Land Co. v. Edmondson, 127 Ala. 445, 464, 30 So. 61; McCay v. Parks, 201 Ala. 647, 79 So. 119.

■ As against Mr. and Mrs. Moseley, who held the legal title, to divest them, there must have been actual occupancy, clear, definite, positive, notorious, continuous, adverse and exclusive for the requisite period, under claim of right, by the Turnipseeds, of a definite tract, and the burden was on them to establish this by clear and convincing evidence. McDaniel v. Sloss-Sheffield Steel & Iron Co., 152 Ala. 414, 44 So. 705, 126 Am.St.Rep. 48; Barbaree v. Flowers, 239 Ala. 510, 196 So. 111. This, we think, they have failed to do.

■ The appellants, without title, actual or colorable, to the property, when invading it are regarded in law as in the nature of trespassers as against the appellee and her husband, who owned the legal title. The doctrine of pedis possessio is the law governing appellants' case and, to sustain their adverse holding, there must have been actual adverse possession of a definite area. Marsh v. Gragg, 228 Ala. 269, 153 So. 219; McCay v. Parks, supra.

■ "In such state of the right asserted, the lead to a recovery is restricted to the area actually occupied by the adverse claimant, or those through whom he claims. * * * When the recovery is thus restricted (unaided by a bona fide claim under color of title, inheritance, or purchase), it is essential that the evidence afford data from which the actual possession of a definite, particular area may be ascertained. It cannot be left to speculation or conjecture. McDaniel v. Tennessee Co., 153 Ala. 493, 45 So. 159; Chastang v. Chastang, 141 Ala. 451, 459, 37 So. 799, 109 Am.St.Rep. 45." Bowles v. Lowery, 181 Ala. 603, 607, 62 So. 107, 109; McDaniel v. Tennessee Coal, Iron & R. Co. et al., 153 Ala. 493, 45 So. 159; Black v. Tennessee Coal, Iron & R. Co., 93 Ala. 109, 9 So. 537; Childress v. Calloway, 76 Ala. 128.

It is clear to our minds that the evidence of appellants has not met the test of the authorities to overturn the legal title of appellee.

■ In lands of the character here involved, occasional acts of entry and cutting of timber therefrom are not sufficient adverse possession to divest a true owner. Williams v. Lyons, 181 Ala. 531, 61 So. 299; Bradley v. Hall, 239 Ala. 544, 195 So. 883; Green v. Marlin, 219 Ala. 27, 121 So. 19; Lucas v. Scott, 247 Ala.Sup. 183, 24 So.2d 540; Smith v. Cook, 220 Ala. 338(11), 124 So. 898.

Such intermittent acts evidencing possession are regarded as merely transitory trespasses without legal right and cannot defeat the right of one in actual or constructive possession under color of title. Bradley v. Hall, supra; Green v. Marlin, supra; Williams v. Lyons, supra; Lucas v. Scott, supra.

■■ So, the desultory cutting by appellants of wood from the swampy woodland and the few and occasional sales of timber therefrom were not, within the rule of our cases, sufficient to establish title to this area as against the owners of the legal title, who, according to the evidence, likewise exerted some similar possession over it. Not only were these possessory acts of the latter such an interruption of the continuous adverse possession of the appellants as would toll the repose of their title:

(Chastang v. Chastang, 141 Ala. 451, 37 So. 799, 109 Am.St.Rep. 45), but, also, the mere intermittent and spasmodic cutting of timber generally on disputed land, as proven for appellants, was insufficient to establish title by adverse possession. To substantiate such a claim, without color of title, there must have been such persistent and continuous cutting from a particular tract of land, to the exclusion of the owner, in such way as to advertise to the world that the party so doing is occupying the specific tract and claiming it as his own. Authorities, supra.

We do not regard the occasional use of the plantation road or the cultivation by the Turnipseeds of the few small patches of land near the line of much import in the case. Such use was but in continuation after the sale to the Moseleys and does not impress us as having been adverse, as that term is applied in the cases. It appears from the evidence that such possession as was exercised was subservient to the Moseley title. The remaining in possession of these little patches and the use of the road, if so, seemingly under the mistaken belief that they were not embraced in the Moseley tract, could not, under the state of the proof, ripen into title by adverse possession. Possession under these circumstances, after conveyance of the property, is regarded as subordinate to the title of the grantee, and only an explicit disclaimer of such relation and a notorious assertion of right by the grantor, not shown to be the case here, will render the subsequent holding adverse and hostile to the grantee. Chandler v. Pope, 205 Ala. 49, 87 So. 539; Alabama Power Co. v. Rodgers, 222 Ala. 571, 133 So. 584; Patterson v. Johnson, 225 Ala. 401, 143 So. 560; 2 C.J.S. Adverse Possession, § 95, page 652; 2 C.J. 143.

The evidence has been carefully examined in the light of the guiding principles indicated in the authorities hereinabove noted and the conclusion required cannot be materially distinguished from those prevailing under similar facts in the cited cases. It is our view that the decree should be affirmed and it is so ordered.

Affirmed.

All the Justices concur.